The court will call Agenda No. 5-115805, Lake County Grading Company, LLC v. Village of Antioch. The party is ready to proceed. Good morning. I'm Warren Smolin on behalf of the Defendant Appellant at the Village of Antioch. This case involves the interpretation and application of the Public Construction Bond Act, which is a statute that has not been addressed by this Court for nearly 50 years. This case presents a situation where a developer furnished bonds to cover public work, but the bonds did not have specific provisions for payment obligations. The issue is whether payment provisions are deemed to be included in the bonds by virtue of the Bond Act. Contrary to the assertions by the plaintiff, the Bond Act does not require a performance bond nor a payment bond. Rather, the Act only requires a bond for contracts involving public work. In other words, the bond requires a public works bond, which is the term or label that is correctly used by the courts in Carroll's seating and concrete structures. The Bond Act then goes on and states that each bond shall be conditioned upon payment and performance. The Bond Act further states that if those conditions are not included in the bonds, then such payment and performance provisions are deemed to be included in those bonds. It is well established under Illinois law that when a bond is mandated by a statute, the provisions of that statute are incorporated into the bond. And that is a position previously enunciated by this Court in the Rosewood case. And that ruling has been followed by courts thereafter. That rule is especially true when the statute specifically deems in its provisions that it is to be incorporated into the bonds. And this is consistent with Section 71 of the Restatement of Suretyship. The lower courts erroneously stated that the Bond Act required the procurement of a payment bond. However, the term payment bond is not used in the Bond Act at all. Courts cannot rewrite statutes by adding provisions that do not exist. In finding that a payment bond was required, the appellate court relied upon the Arden Electric case and the East Peoria High School case. But neither of those cases indicated that a surety bond of any kind had been furnished by the contractor. Therefore, neither of those cases involved a situation where a bond for public works had been furnished, but the bond did not contain a payment provision. The appellate court found that the Bond Act's language deeming a payment provision applies only to bonds that already contain payment provisions. However, that interpretation of the Bond Act would render the deeming language superfluous, which is contrary to Illinois law. Similarly, the plaintiff argues that the phrase each such bond which precedes the deeming language only applies to payment bonds or bonds that already contain payment provisions and not to each bond that is furnished by a contractor for public work. That interpretation fails to give meaning to the entirety of the statutory language. As stated by the Seventh Circuit in the Concrete Structures case, and I quote, by operation of law, every public construction bond is in compliance with the Bond Act. The plaintiff also argues that the village did not comply with the Bond Act because of Section 3.8 of the Infrastructure Agreements limited the amounts of the bonds to the costs covered by the SSA or Special Service Area bonds. However, Section 3.8 of the Infrastructure Agreements only limits the amount of the bonds, but not the scope of the bonds. And under the Bond Act, the public entity may fix the amount of the bonds. In this case, the bonds that were furnished exceeded $18 million, which far exceeded the amount that was claimed by the plaintiff. Furthermore, the bonds make no reference to the Infrastructure Agreements. The bonds rather state the scope of the work that is covered by saying that the bonds covered the improvements as detailed in the plans and specifications prepared by the engineers for the subdivisions. And the work performed by the plaintiff was within the scope of those plans and specifications. The plaintiff makes the argument that the bonds did not cover two phases in the club land subdivision, phases two and four. However, the plaintiff does not assert a claim in these proceedings for payments in connection with those two phases. Their claim is based upon only phases one and three of the club land subdivision, and they assert no claims on phases two and four. This case also raises the issue as to whether plaintiff's claim is barred by the fact that they did not comply with the 180-day notice requirement under Section 2 of the Bond Act. Well, is plaintiff suing to enforce the Bond Act? Their claim is based upon the Bond Act. But it's a contract claim. Isn't it a third-party beneficiary? Yes. So that raises the issue as to whether the plaintiff should be considered to be a third-party beneficiary under these infrastructure contracts or agreements. And that is where there is a split in the appellate court. The Arden Electric Court found that the four-year statute of limitations applied because the court found there was sufficient language in the underlying contract by which the court could find that the subcontractor was an intended beneficiary in accordance with the Carson-Pury-Scott ruling by this Court. Is there evidence in the agreement between the Village and Newman that the plaintiff was an intended third-party beneficiary? It's our position that no such provision exists in these infrastructure agreements. The appellate court found and relied upon a fragment of only one sentence which referenced that the plaintiff could retain, I'm sorry, Newman-Holmes could retain subcontractors. But that sentence goes on and says that they could retain subcontractors without complying with the competitive bidding statutes of the state. It had no provision for the payment of obligations to the subcontractors. So, therefore, we respectfully submit that there is no basis in the underlying contracts by which a court can find that the plaintiff was an intended beneficiary. Then why is the subcontractor's term in the contract that both parties agreed to if there wasn't some sort of an agreement that subcontractors would be somewhere involved? Well, the only involvement that they would be involved, but only that Newman-Holmes would not have to competitively bid the retention of subcontractors. There was no provision in these agreements as opposed to the agreements in Arden Electric and in East Peoria High School where they found that there were provisions whereby the public owner would assure that payments would be made to the subcontractors. So, therefore, the Shaw Industries Court found that the claim was predicated solely upon the Bond Act and that the notice requirements were a jurisdictional requirement that had to be complied with to assert a claim against a public entity. Furthermore, that even if the court does find that there is third-party beneficiary status, the plaintiff's claim is barred by certain basic contract concepts. First of all, under contract law, a claimant must comply with all conditions preceding under the contract. And if the Bond Act is incorporated into the contract, then they must comply with the notice provisions which are clearly conditions preceding to rights under the Bond Act. Help me understand this. The suit here is by the subcontractor against the city or the village. The city, I guess. The village. The village, sorry. Saying they're a third-party beneficiary, is it your defense that they have to proceed only against the bond or can they proceed directly against the village for the amounts they seek? Well, our contention is, is that their remedy was to pursue a claim under the bonds. But cannot they pursue a remedy directly against the village even if there is no bond? And that's still a question, I guess, as to whether the bond is a performance or payment bond or if it's... Yes. In answer to that question, assuming that there was no bond or this Court finds that the payment provisions are not incorporated into the bond, we say that they do not satisfy the standing as a third-party beneficiary. They did not comply with the notice requirements. The notice requirement, it has to do with the bond, so... Yes, right, under Section 2 of the Bond Act. Right. And under contract law, if it is for a breach of contract, they did not comply with the conditions preceding, which would be notice. Furthermore, contract law only would put a claimant into the position that they would be in if there was no breach. And in this case, they failed to give notice within 180 days pursuant to their business decision, a conscientious business decision that they did not want to tarnish their relationship with Newman Homes. By the time they finally did give notice, all of their rights under the Bond Act had expired. And so what they are trying to do here is to be placed in a position, a better position, than they would be if there was a payment bond, if they had rights under the Bond Act. Maybe I misunderstood Justice Carmar's question, but I think a portion of that question is, your position is if the subcontractor payment provision is incorporated into the bond, then there is no reason to look at the contract, right? There is no action that can be brought separate and apart. And maybe I'm wrong. I thought he asked are there two parallel paths here. Right. Yes. We would win on two points. One is that if this Court finds that the payment provisions are incorporated into the bonds that were furnished, there was no breach of any obligation that the village owed to the subcontractors. We complied by obtaining those bonds, which protected them. That would preclude, then, any separate action by the subcontractor against the village if there was a bond. That's your position? Yes. That is correct. And that is our position, that we satisfied the requirements by obtaining these bonds. And by virtue of the deeming language in the Bond Act, those bonds contained payment provisions for the benefit of the subcontractors. And what they should have done was to serve notice within 180 days of last performance. And that notice only goes to the public entity and to the contractor. There is no requirement that the notice has to be served upon the surety. So the essence of their claim for breach of contract against the village is that they did not obtain bonds that protected their interest. And we submit that the village did obtain those bonds. Isn't there a provision in the Bond Act that says that the provisions of the Act are independent of, in addition to other remedies that are provided at law, something in law and in equity? And if I'm correct, is that, first of all, am I correct? And second of all, if I am, what does that mean? Yes. Well, the Illinois Municipal League filed an amicus brief in which pointed out that the Bond Act specifically states that the Act does not increase any liability to public entities that did not exist before the enactment of the Bond Act. So before the enactment of the Bond Act, there was no duty for the public entities to obtain bonds. So, therefore, the failure to obtain bonds would not be an action, would be an action that is prohibited under the Bond Act language by not increasing the liability to the public entities. So that provision only has reference to if there is no bond. So it isn't that they can sue under the bond or they can pursue other remedies. Yes. Well, yes, if there are other remedies. But they would not have a remedy against the village because we obtained bonds. And those bonds protected the subcontractors. And so, therefore, we breached no aspect of the Bond Act because we obtained the bonds that protected them. In conclusion here, the village would respectfully submit that the court should find that the village complied fully with the requirements of the Bond Act by obtaining bonds that related to the public work and that by virtue of the specific language of the Bond Act, payment provisions are deemed to be part of those bonds. And, furthermore, even without that deeming language, this Court has found that when a statute mandates the procurement of a bond, the provisions of the statute are incorporated into those bonds. And then for the further reason that if for some reason this Court finds that the bonds obtained by the village did not satisfy the requirements of the Bond Act, that there was no that the plaintiff has no cause of action because they failed to give required notice and that that would preclude them from asserting a breach of contract claim against us because they're seeking to be placed in a position better than if there had been obtained, bonds obtained, and windfalls are not allowed. Kennedy, if I understood the appellate court correctly, though, they said that the statute of limitations for their suit would be 4 years as a third-party beneficiary that would not be found by the 180 days. Is that correct? Yes. And they found that because they found that the plaintiff here was an intended third-party beneficiary under the agreements, but they made that finding by considering only a fragment of one sentence. And if they had considered the entire sentence, it would show that that sentence was for the benefit of Newman Homes, saying that they were not required to do a competitive bidding. And there is no provision in the infrastructure agreements that impose any kind of obligation upon the village to assure payments going to the subcontractors. And that's what distinguishes this case from Arden Electric, East Peoria High School, and puts it within the scope of the Shaw Industries case where they found that there was no intent in the underlying contract to benefit the third parties. So you're asking us to find that they are not a third-party beneficiary, but if we do, that you have a bond that protects you from their suit? Yes. And furthermore, that even if there was a third-party beneficiary and the bond didn't cover them, under contract law, they did not comply with conditions preceding, and they're seeking to be placed in a better position than if they had complied with the statute. So for all of these reasons, we respectfully request that this Court vacate the judgment that was entered by the trial court against the village and affirmed on appeal by the appellate court and enter judgment in favor of the village and against the plaintiff. Thank you. Bogdan Martinovich on behalf of Lake County Grading. I want to put this in context by discussing the facts, which are really not well, they're set out in the briefs, but not really well developed. This is not a traditional type of public works project. Antioch embarked on an unconventional developmental agreement. There were no public bids. There was no appropriation done by a village. There were no public funds or taxpayer funds in the traditional sense. What happened was there was this special SSA, the special service area, and financial bonds were created to pay for this particular project. This was a 1,500 single family unit development, and it's identified in the briefs as Newman Homes. And what's important is that the Court understand the entitlement documents. The contract between Newman and the village were a couple of documents. There was an annexation agreement, and there was a developmental agreement, and it arose out of a lawsuit. This agreement came as a result of a settlement of a lawsuit between the village of Antioch and some other entity. Now, what's important is the agreements provided that public improvements would be funded from the proceeds of the bonds issued in connection with the SSA, and the developer was not required to provide performance guarantees to secure the installation of public improvements to the extent of such funding. And I'm going to quote two small sections. The entitlement agreements provided, quote, the village shall recognize the proceeds from the sale of the bonds in connection with the SSA as fully satisfying the developer's obligation to provide for security. And then it went on to say no security is required for that portion of the cost of the public improvements that are to be paid from the bond proceeds. And then, quote, as the construction of the public improvements will be funded in part by the proceeds of bonds issued in connection with the SSA, the developer shall serve as the village contractor in connection with said construction and shall be permitted to draw upon the bond proceeds for the purpose of paying subcontractors in connection with said construction. So I know that the village has been harsh with the appellate court by claiming, well, they're just taking a small section of another provision to support the third-party beneficiary agreement. But this provision that I just read clearly addresses that. Why isn't under 550-1 the payment provision incorporated into the bond? Why it's not? Because it's simply not. What we have here, if you've got to read the statute and respectfully submit that the village misstated what the statute says, the village said if those provisions are not included, they're deemed to be included. That's not what the statute says. The statute says that the bonds shall be conditioned upon the payment and the performance. And then it goes on to say in the key languages, each such bond, the predicate language, we have to have a bond conditioned upon payment and performance, and then it goes on to say each such bond shall have this language, whether it's in there or not, and puts it in quote, that's to take care of any shortcomings of any bond that's conditioned on payment or performance. Could you help me? I really don't understand your argument there. Okay. So the language of the statute is, first of all, requires that a bond, singular bond, be required in the contract. And the amount of the bond, one bond, shall be fixed by the commissions, and the bond shall be conditioned with two different conditions. Right. One bond. And then the next sentence says, each such bond, singular, is to contain the following provisions, whether such provisions are included in such bond or not. Doesn't it seem to say that if there is a bond, one bond, and it doesn't contain some language, then we're going to read in this language? Why am I reading that incorrectly? Well, I submit that you're reading it incorrectly, with all due respect, is because it requires that the bond, and there are some cases that say that you don't have to have one bond, you have two separate bonds to cover that particular section. But it says that it shall be conditioned upon two things. Right. One, to protect the taxpayer, and that's the performance bond. And two, to protect the subcontractor. And so what if the bond doesn't have that language in it? Then what happens? We have in this case, we have a subdivision bond that doesn't have it, and the bonding company doesn't cover it. It's not, it's not, doesn't cover it. Period. Help me, though. Do it again. The bond doesn't have the required language. The language is missing. Some important language is missing. No, no. It's not the language that's missing. It's the condition that's missing. Okay. The condition is missing. Right. Okay. Then why doesn't it say each such bond is deemed to contain the following provisions, whether such provisions are included in such bond or not? It says each such bond. It still has to be such a bond. Such a bond has to have a provision for payment. If it doesn't, it's not such bond. You're taking the position of the appellate court that you have to incorporate a provision. A payment bond, you incorporate payment provisions. A performance bond, you incorporate performance provisions. Right? That's basically the position they took, and that's what you're taking. And I think that's what the General Assembly. Well, let me ask you in light of that, what about the language that says a bond, as Justice Tice was talking about, and that such bond, quote, shall be conditioned for the completion of the contract, for the payment of material used in the work, and for all labor performed in the work, whether by subcontractor or otherwise, doesn't for the completion of the work sound like performance? Yes. Completion of the work is performance, not payment. And we're here about payment. Right. But no one disputes that Newman purchased and delivered a bond. A bond, a subdivision bond. Right. And, you know, it didn't really cover everything. That's something I want to address in a minute. So I guess what we're asking is, okay, so it talks about performance, but then it goes on to say deemed to contain certain provisions, whether such provisions are inserted into such bond or not. Where is there any differentiation between that the provisions that are incorporated, it has to specifically spell out that it's a payment bond versus a performance bond? Where do we glean that from the statute? Well, the statute says it's the predicate language of each such bond. I mean, you don't get, you know, it has to have those two elements in there. Otherwise, it's not such a bond. Well, you're calling the language that I just quoted a performance bond language, right? Well, the one section. So if it spells out performance, why would you need a further provision that says including any other provision that isn't in here? Why wouldn't payment then be part and parcel of what you call a performance bond? Because the legislature didn't intend to create a payment bond with a performance bond. The reason for the language is. You see what I'm saying, though? I mean, let's just make it simple. If a bond says you have to pay. Yeah. And so you have to pay. Well, all right. In the language itself, it says you have to pay. So why would you need then language that further says anything that's not in here is incorporated? And you would say, well, the only thing you can incorporate into that scenario is payment. Well, it's already spelled out payment. So in this one, it spells out performance. Why wouldn't payment be included, incorporated, because it's not in the provision itself? The legislature put the language in quotes, okay? It says the following language shall be deemed to be in the bond or not. The reason for that is to cover any shortcomings of payment or performance bonds. You have bonds that are written very cryptically. It might just say we'll cover payment. Well, what does that mean? The statutory language that the legislature requires to be deemed to be in there takes care of any ambiguities, takes care of any argument as to what it means when you just say payment. That's the purpose of that statutory requirement. That would be imputed in that. But you still have to have a bond conditioned upon the payment or conditioned upon performance to cover. So you're saying the bond the legislature contemplated would be multiple bonds for each project? No, just that a bond, whether it be in, you can satisfy it by having two separate bonds, but a bond be conditioned on those two things, conditioned on payment and conditioned on performance. Those are two separate obligations. A bond in companies, a bond, it's, you know, contract language.  If it doesn't cover that, if it doesn't at least condition it upon payment, there's no way you can have a claim for, claim it to be a payment bond. Well, if the legislature's intent is to protect the public and protect the subcontractors, why would they do what you just suggested? I mean, that makes it more, that makes it trickier and more difficult. If you interpret it as Justice Tice is talking about, it's a bond, or the bond, it's all in one. But it has to be conditioned upon payment and performance. It can't be one, you know, what the village is asking this court to do is, and we're supposed to be here attempting to look at the plain language of the statute. What the village is requesting that this court do is by fiat legislate, well, any time we have a permanent bond that may involve a village, that also includes payment. Any time we have a licensed bond, that will also include payment. That's not the intent of the statute. That's why the statute says it has to be conditioned upon payment and or performance. And what we have to look at is what the structure here and the intent was when the village entered into the contract with Newman. May I say this? Going back to the plain language and this quoted language. The language says the principle and sureties on this bond agree. That all terms and conditions of the contract between the principal and the state will be performed, fulfilled, and to pay all persons, firms, corporations, et cetera. So here the sureties are part of this section that is deemed to be read in. But any surety that issues such a bond is agreeing that that bond will be sufficient to pay for completion and payment. Am I misreading this? Every surety that issues a bond conditioned upon payment. Is that where do you find that in this? It says every bond, each such bond. Each such bond. Such bond, and I can go back to the predicate language as the appellate court recognized. So under your theory, each such bond, here the bond read completion and not performance, right? Is what you say? No. This particular bond just said, yeah, basically to complete the contract, right? All right. So then it's that. So now we're going to talk about that bond. It's only about completion. The surety who issued that bond agreed that that bond was sufficient to pay for completion and payment. Isn't that what that says? I don't get there, Your Honor, because the predicate language says each such bond. In other words, you have to have a bond conditioned for payment in order for that statutory provision to be applicable. So even if it's a performance bond, the surety has not agreed to pay? That's correct. The surety is only bound by its contract. Contract law applies to surety bonds. And the surety is not going to honor a bond that's not at least conditioned upon payment. I want to go back to my question again just to understand your argument. Your argument seems to be that 550-1 is talking about payment bonds, right? Isn't that basically your argument? When it says it's incorporated, I think that's what your argument is, not performance bonds. 550-1 deals with payment bonds. So if you have a payment bond, then incorporate it into that bond per 550-1 as a provision for payment. Is all the language that's set forth in quotes? Right. And I go back to my initial question, quoting from 550-1, listening to your argument that 550-1 deals with payment bonds. And it says, a bond, we've gone through that a number of times, shall be conditioned for the completion of the contract, for the payment of material used in the work, and for all labor performed in the work, whether by subcontract or otherwise. Does that not sound like 550-1 deals with performance? It does, but it goes on to say, in order for that bond that's issued under that section, it says each such bond shall have this language in it or not. You need a bond conditioned upon payment. This bond, the bonds we're talking about, are not conditioned upon payment, plain and simple. I don't know how much, I don't know if I'm answering your question or not. Well, I'm just trying to glean that from the statutory framework in light of the fact that you're saying that 550-1 deals with payment bonds. I mean, that's... It deals with both. I mean, it requires... Okay. All right. But your argument's basically the same then as the appellate court. There's performance bonds, there's payment bonds. You can only incorporate based on the nature of the bond. Correct or not? Under 550-1. Okay. And I just want to go back to the facts just for a moment. The SSA funds were tightly controlled by the village. Newman had to submit written requests, the village engineer had to inspect and approve, and upon approval, the payment was secured from the SSA funds and paid to the subcontractors. At the time that Newman breached his contract with Antioch, there was $1.7 million of improvement funds available to pay Lake County grading. The village failed to have sufficient performance bonds to cover the completion of the work, and they used the improvement funds' monies instead of paying Lake County grading. And it must be understood here that the village has received public improvements that were contracted for, but they have not paid anyone for that, for the work that Lake County grading did. I think that's important to understand. This is not a situation where the village may be required to pay twice. There's simply a... Counselor, if we disagree with your interpretation of the bond that we've been talking about, do you have any other avenue of recovery? If you find that the language is imputed, then the answer is no. Okay. Thank you. Thank you. I will make my remarks short because I believe that the court does fully understand the issues in this case. The key language in the Bond Act is in the first sentence of 550-1, which states the nature of the bond that must be furnished. And it only requires that a bond be furnished for contracts involving public works. So we're dealing with a public works bond. And once those bonds are issued, then the deeming language that is set forth for performance and payment are incorporated into each of those public works bonds. And so, therefore, the village fully complied with the requirements under the Bond Act by obtaining bonds that covered all the work that was performed by the plaintiff. And when the plaintiff was not paid by this developer, they had 180 days to assert their rights under the Bond Act, which they purposely did not pursue for business purposes. That was their remedy. They chose not to pursue that remedy. But the village did comply with the Bond Act to obtain bonds covering all of the work performed. Unless there are any other questions, that will conclude my remarks. Thank you. Thank you. Case number 115805, Lake County Green Company LLC versus the Village of Antioch is taken under advisement as agenda number five. Mr. Moorman, Mr. Martinovich, thank you for your arguments this morning. You're excused at this time.